**Law Office of Mohammed Gangat**

---

> Application granted. Having carefully reviewed the motion, attached exhibits, the executed proposed settlement agreement, and Plaintiff's supplemental submission, the Court finds that all of the terms of the proposed settlement (including the allocation of attorneys' fees and costs) appear to be fair and reasonable under the totality of the circumstances (and in light of the factors enumerated in Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). See Cheeks v. Freeport Pancake House, 796 F.3d 199 (2d Cir. 2015). Accordingly, the proposed settlement is hereby approved.
>
> The Clerk of Court is respectfully directed to close this case.
>
> SO ORDERED.
>
> _____
> Philip M. Halpern
> United States District Judge
>
> Dated:  White Plains, New York
>         June 23, 2025

VIA ECF
Honorable District [Judge]
United States Distr[ict Court]
300 Quarropas Stre[et]
White Plains, NY 1[0601]

RE:   *Her[rera v. Capri II Pizza, Inc.]*
      Doc[ket No. 7:24-cv-09483-PMH]

Dear Honorable Ju[dge Halpern,]

     We represent [Plaintiff Raul Herrera ("Plaintiff") in the above-referenced matter. Along] with counsel for the Defendants, we write to submit the parties' joint request that the Court approve the parties' settlement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Mr. Herrera has executed an individual settlement agreement with the Defendants[1] (the "Settlement Agreements"). The parties' executed Settlement Agreement and Release are attached as Exhibit A.

     For all the reasons that follow, the parties respectfully request that the Court grant the instant motion in its entirety on the grounds that the settlement in this FLSA action represents a reasonable compromise of a bona fide dispute and a fair distribution of the settlement proceeds.

**Procedural History**

     This lawsuit was commenced on February 29, 2024, December 12, 2024, by plaintiffs Raul Herrera and Francisco Reyes (individually and on behalf of a class) against Capri II Pizza, Inc. and its owners Giulio and Christopher Divito in the Southern District of New York. The case was initially assigned to an unassigned judge but was later designated as related to case *Bryan Ruiz et al., v. Capri II Pizza Inc.*, et al, 7:24-cv-01536 and reassigned to Judge Philip M. Halpern on December 30, 2024. Defendants waived service in February 2025, with their answer due February 18, 2025.

     However, before defendants filed their answer, plaintiff Francisco Reyes reached a settlement. On February 24, 2025, the court entered judgment on an accepted offer of judgment under Federal Rule of Civil Procedure 68, awarding Reyes $15,000 as full settlement of his claims, including attorneys' fees and costs. Reyes was subsequently terminated as a plaintiff, leaving only Raul Herrera to proceed individually. Defendants filed their answer on March 11, 2025, and after several extensions, the court has set a June 6, 2025 deadline for the parties to file either a joint Cheeks submission with a settlement agreement or a proposed judgment under Rule

---

[1] The other plaintiff in the case, Francisco Reyes, had already reached an agreement to settle his case earlier and the parties filed a Rule 68 offer of judgment. See Dkt. Nos. 16 - 17.

68, with all conferences and deadlines currently adjourned sine die pending resolution. The parties now respectfully submit this settlement agreement for the Court's approval.

### Legal Standard for Approval of Settlement

Proposed settlements under the FLSA require court approval because private settlements under the FLSA will not effectuate a valid release. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). Federal courts routinely allow employees seeking to settle and release FLSA claims to do so pursuant to a judicially supervised settlement. *Le v. SITA Information Networking Computing USA, Inc.,* 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June. 12, 2008). When parties bring a proposed settlement of an FLSA claim before a court, the court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a bona fide dispute. *Lliguichuzhca v. Cinema 60, LLC,* 2013 U.S. Dist. LEXIS 79543 at *4 (S.D.N.Y. June 5, 2013). Generally, there is a "strong presumption in favor of finding a settlement fair..." *Id*.

The FLSA places strict limits on an employee's ability to waive claims "for fear that employers would [otherwise] coerce employees into settlement and waiver." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Accordingly, a settlement of FLSA claims must be supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement in order to be valid and enforceable. *Id*.

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). *Cheeks* also admonishes that courts should guard against "highly restrictive confidentiality provisions," overbroad releases, and provisions that would set attorneys' fees without "adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). The court must also assess the reasonableness of the fee award. *Id*.

### The Settlement Agreement is Fair and Reasonable and Satisfies the *Wolinsky* Factors

The Agreement, attached as Exhibit A, reflect the Parties' intention to settle Mr. Herrera's claims for a total of $60,833.33.[2] The Agreement calls for Plaintiff Herrera to receive $40,232.37 and for his counsel to receive $20,600.96.[3] Across all three individual settlements, the initial payment of approximately $45,000[4] will be issued to Plaintiffs within 30 days of court approval

---

[2] This case has a related matter, Ruiz et al., v. Capri II Pizza Inc., et al, 7:24-cv-01536 (the "Ruiz Matter"), which has also settled. Globally, all three plaintiffs' settlements total $145,000.
[3] The prosecution of this action required plaintiffs' counsel to advance various litigation expenses, including the $405 filing fee, $358.03 for service of process, and $185 in deposition-related costs, totaling $948.03. These expenses are distributed equally between the three different Plaintiffs (one in this matter and two in the Ruiz matter).
[4] To divide the payments equally over the installment payments, the initial $45,000 payment will include an additional few cents for each plaintiff.

of the Agreement and the remaining payments will be paid over the following 18 months and explained in detail in the agreements. *See* Exhibit A. The payment of $145,000 as damages to Plaintiffs reflects a reasonable compromise in view of the possible recovery, both sides' risk of loss given the serious disputes over issues of fact and law, and Defendants' economic position. The settlement also provides Plaintiffs with their damages now rather than later and enables both parties to save the time and expense of further litigation.

The Defendants face difficult financial circumstances which "militates in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013); see also *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 Civ. 3043 (PAE), 2015 WL 5577713, at *10 (S.D.N.Y. Sept. 22, 2015) (explaining that significant "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approval of the settlement agreement, which "[g]uarantee[d] recovery from the other two defendants in the event that [one] prove[d] unable to pay the entire settlement amount"). Defendants have asserted that they may be filing for Bankruptcy. Plaintiffs recognize that Defendants' financial situation is especially precarious. It therefore makes no sense for Plaintiffs to force Defendants to spend money on litigation that would be better put to resolving this case. Given the substantial amount of the settlement and the large risks that Plaintiffs would be taking if they proceeded, this settlement is fair and reasonable.

Approval of a settlement is warranted where it is the result of "contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Reyes v. Buddha-Bar NYC,* 2009 U.S. Dist. LEXIS 27852, at *8 (S.D.N.Y. May 28, 2009). The Parties participated in the Mediation program supplied by the court and continued to negotiate throughout Discovery until an agreement was ultimately reached. At all times the negotiations here were conducted at arms-length by counsel well-versed in wage and hour litigation.

### The Settlement Agreement is Consistent with the *Cheeks* Admonitions

The Settlement Agreement does not run afoul of *Cheeks'* admonitions related to overbroad releases or attorneys' fees. The Settlement Agreement contains a mutual general release. Mutual general releases in FLSA settlement agreements are routinely granted by courts in this Circuit because they do not unfairly benefit the defendant but rather provide both parties with the reassurance of finality. *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)) (approving broad releases after noting that they were mutual, thus "assuaging concerns that the waiver unfairly benefits only Defendants"); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015) ("A mutual releases will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes. It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation. This result is consistent with the goals of a fair and just settlement.").

Plaintiff's attorneys' fees of $48, 017.33 do not present any barrier to approval. They represent one-third contingency fee set forth in the Plaintiffs' retainer agreement. Courts "regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (quoting *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890, (S.D.N.Y. Dec. 14, 2015). *See also Ezpino v. CDL Underground Specialists, Inc.*, 2017 U.S. Dist. LEXIS 103012 (E.D.N.Y. June 30, 2017), report and recommendation adopted, 2017 U.S. Dist. LEXIS 110557 (E.D.N.Y. July 17, 2017) ("A one-third contingency fee is a commonly accepted fee in this Circuit.")

I, Eliseo Cabrera, spent 49.7 hours working on this case. I was admitted to the bar of this Court in 2019 and have since practiced labor and employment law litigation. My regular hourly rate is $375. Based on these hours and pay rate, my lodestar calculation is $18,637.50.

In total, the lodestar amounts would be $18,637.50.Counsel's calculated lodestar amount falls below the requested attorneys' fees award in this settlement, resulting in a positive multiplier that reflects the contingent nature of the representation, and the favorable outcome achieved for the plaintiffs. *See* Exhibit B. Although a lower lodestar amount is common in approved attorneys' fees amounts, courts have established that even standard one-third fee awards may be considered excessive when compared to the actual work performed in a case. In *Larrea v. FPC Coffees Realty Co., Inc*., No. 15-CV-1515 (RA), 2017 WL 1857246 (S.D.N.Y. May 5, 2017), the court declined to approve an arrangement resulting in an 11.4 multiplier of the lodestar figure. While the present matter presents a nuanced question, the negotiated settlement appears to fall within acceptable parameters. Based on the submitted documentation, counsel's lodestar calculation amounts to $18,637.50. Accepting these hours and rates as both accurate and reasonable, the requested fee represents a 2.58 multiplier of the lodestar. This multiplier is typically permitted in this Circuit, such multipliers are not unprecedented. As noted in *Johnson v. Brennan*, No. 10-CV-4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011), "Courts regularly award lodestar multipliers from two to six times lodestar." Similarly, in *Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014), the court acknowledged that "[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District." The Court recognizes the value of promoting expeditious resolution of such matters and avoiding "creat[ing] a disincentive to early settlement"—particularly in cases where plaintiffs receive substantial and prompt compensation. *See Hyun v. Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016).

For all of the foregoing reasons, the parties respectfully request that this Court grant their joint motion and approve the settlement of this action.

Respectfully Submitted,

*/s Eliseo Cabrera*
Eliseo Cabrera, Esq.